WAGNER v. MT. CARMEL IRON WORKS.

(District Court, M. D. Pennsylvania. June Term, 1915.)

No. 216a.

1. PATENTS ⬤��ý314—SUIT FOR INFRINGEMENT—EQUITY JURISDICTION.
    A court of equity will not dismiss a suit for infringement, in which an injunction and accounting are asked, after a hearing on the merits, because it does not appear that the infringement was continued.

2. PATENTS ⬤➟328—VALIDITY AND INFRINGEMENT—JIG FOR COAL WASHERS.
    The Falkner, Schultz & Wagner patent, No. 977,087, for a jig for coal washers, *held* not anticipated, valid, and infringed.

In Equity. Suit by John F. Wagner against the Mt. Carmel Iron Works for infringement of letters patent No. 977,087, for a jig for coal washers, granted to Henry W. Falkner, Franklin Schultz, and John F. Wagner on November 29, 1910. Decree for complainant.

R. S. & A. B. Lacey, of Washington, D. C., John O. Ulrich, of Tamaqua, Pa., and R. W. Bishop, of Washington, D. C., for plaintiff.
Voris Auten, of Mt. Carmel, Pa., for defendant.

WITMER, District Judge. [1] This is a suit on a patent brought by John F. Wagner against the Mt. Carmel Iron Works, to restrain infringement of such patent and to recover profits and damages. The bill is in the usual form, and the answer consists of a general denial of its respective allegations, asserting also that the plaintiff was not lacking full and adequate relief at law, wherefore this court was without equity jurisdiction. This objection was not pressed on argument of counsel, and if seriously intended may be dismissed, by noting that the bill of complaint, praying for an accounting of profits, also asks for an injunction to restrain infringement, and the court, having jurisdiction at the inception of the suit, would not, after hearing on the merits, dismiss the bill, even though it did not now appear that the infringement is continuous, Clark v. Wooster, 119 U. S. 322, 7 Sup. Ct. 217, 30 L. Ed. 392; Goldschmidt Thermit Co. v. Primos Chemical Co. (D. C.) 225 Fed. 769.

[2] The answer also in a general way sets up invalidity, want of patentable invention, prior use, and a denial of public use. In the absence of other notice, these defenses are not pleaded with the particularity required by section 4920, Rev. Stat. (Comp. St. 1916, § 9466). However, in the absence of evidence rebutting the presumption of

validity evidenced by the patent, it must be concluded that the patent is valid and that the patentees are the inventors of the invention claimed.

True, some evidence has been introduced attempting to show prior use in the form of a jig known as the "Crist jig." If under the pleadings this defense could be considered, it need only to be said that this jig does not anticipate, being dissimilar in construction and operation in the material parts under consideration in this case. It remains that the only and the real defense in this case is that of noninfringement.

The plaintiff's invention consists of an improvement in jigs used in coal washeries for separating the slate from the coal. The patentees, Henry W. Falkner, Franklin Schultz, and John F. Wagner, the former having since the grant assigned their interest in the patent to the latter, expressed themselves in the specifications as to the purpose or object of the invention, as follows:

The object of the invention is to provide a jigger of simple, compact, and durable construction, in which the separation of slate and other foreign matter from the coal is effected more thoroughly and economically than heretofore.

A further object is to provide a coal separator, the jig pan of which is mounted for both vertical and horizontal movement in the washing tank; said pan having its rear end stepped, so as to impart a rolling movement to the coal over the bed of slate, and thus permit the ready discharge of the coal at the front of the machine.

A further object is to provide a novel form of gate or cradle for automatically controlling the discharge of slate from the jig pan to the washing tank; the construction of the jigger being such as to permit the separation of both cube and flat or flake slate.

A still further object of the invention is generally to improve this class of devices, so as to increase their utility, durability, and efficiency.

After describing the invention in its construction, operations, and minor details, the patentees set forth their claims of invention, the first two of which only are said to have been infringed:

1. In combination, a tank, a jig screen suspended within the tank and having its feed end provided with steps, the treads and risers of which are perforated, and means for gyrating said screen in a vertical plane.

2. In combination, a tank, a jig screen suspended within the tank and having its feed end provided with steps, the treads and risers of which are perforated, that portion of the screen between the steps and the discharge end thereof being substantially in one plane, and means for gyrating said screen in a vertical plane.

The complete machine in which the invention of the patent is incorporated comprises a frame supporting a stationary tank, in which is a body of water, generally running water, sufficient in quantity to approximately fill the tank. In this tank is suspended a jig pan, which is movable vertically and longitudinally within the tank, and into which the coal and slate, as brought from the mines, is delivered at one end. The operation of the pan effects a separation of the slate and coal, and means are provided for permitting the coal and slate to be discharged upon separate conveyors, by which they are carried away and disposed of in a manner not material to the issue herein. In the embodiment of the invention which is illustrated in the patent in suit, the jig pan is shown suspended from hangers on eccentrics, which are provided on

two shafts journaled on the top of the frame and connected by chain and sprocket gearing, so that as the shafts rotate the eccentrics will act on the hangers to move the jig pan up and down and also back and forth within the tank. One of these shafts is equipped with a band pulley, so that power may be transmitted to the jig from an engine or motor. At its feed end, the jig pan has a stepped construction, and the bottom of the pan, as well as all the parts of the stepped portion, are perforated, so that, as the pan moves within the tank, the water may rush through the perforations and act upon the coal and slate to effect separation of the same.

The specifications of the patent say the jig pan is mounted for both vertical and horizontal movement in the tank and has "its rear ends stepped so as to impart a rolling movement to the coal over the bed of slate"; that the mounting of the pan permits "free oscillatory movement of the pan in both a vertical and horizontal plane"; that the "stepped portion" of the pan "has the effect of kicking or feeding the coal in a forward direction, and also has a tendency to turn the light particles of slate edge down, thus permitting the separation of flat or flake slate, as well as cube slate"; and that during the gyrating movement of the jig pan the free coal will be discharged.

The invention, summarily expressed, lies in the stepped portion of the bottom of the sieve or jig pan nearest the feed end with perforations in this stepped portion and means for imparting to the sieve or pan oscillatory or gyratory motion. It is through this stepped and perforated portion of the pan, by the action of the water forced through the openings and thus acting upon the coal and slate, that the object to be attained is accomplished. Have these elements in principle and result been carried into and appropriated by the defendant in the construction of its machine?

The jigs manufactured and sold by the defendant, and said to constitute infringement, are known as "B. & K. jigs," originally patented January 9, 1912, to George W. Keller, Charles Brassington, and Abraham Brassington (No. 1,014,308), and afterwards, October 22, 1912, embodied in patent No. 1,041,800, to same parties, including one Harry D. Kastenbader.

The evidence discloses, and it is interesting to note, that Keller and the two Brassingtons were employed at the Midvalley Colliery, where Kastenbader was superintendent, and that these persons were familiar with the installation and operation there of the plaintiff's jig several years before the date of their alleged invention; that they there, from the patent in suit, obtained the fundamentals on which they constructed their jig, in so far as the same is here under consideration, is not doubted. This is apparent from an inspection of their machine, their letters patent, and their testimony in this case.

Like the patent in suit, defendant's machine, their alleged invention, also has a jig box or sieve, suspended for movement up and down longitudinally in a stationary tank containing water, which brings about the separation of coal and slate by their stratification, due to their difference in specific gravities. This bottom or sieve furthermore has a stepped portion at the feed end of the jig box, which corresponds

to and performs the functions of the bottom of the jig in the patent in suit. True, the drawings of plaintiff's patent and the jig as installed have two steps at right angles with the base, whereas the defendant's has but one step, slightly inclined; however, plaintiff's patentees claim a stepped construction without regard to numbers or degree of inclination, and answering the same purpose as defendant's, possibly in a different degree of efficiency, their device must be held as the equal and like defendant's in the accomplishment of the ultimate end to be attained.

Defendant's witnesses, the alleged patentees named, attempted to differentiate their infringing jig from the design and function of the stepped construction of the bottom of defendant's jig, as claimed in the patent and explained by plaintiff's witness, Earl Wagner, and plaintiff's expert, Charles J. Williamson, in that the action of the water, coming through the riser or step, imparts a rolling motion to the slate and coal in the sense that it forces it ahead, and turns the flat slate on its edge, and brings it to the bottom of the pan, forcing it toward the slate discharge, accomplishing at this point the greater part of the separation of material. In this they have not succeeded. Both the jig pan in suit and the infringing device are so suspended and operated in the water tank as to afford movement of the jig pan first in one direction and then in the opposite direction, slightly shifting the same from a higher to a lower level, and alternately, thereby causing a gyrating or oscillatory movement of the pan, with the result, on the riser portion of the stepped part of the pan, of emitting jets of water into the jig pan, and against the material therein as it comes into the feed end of the jig pan.

That the action of the stepped portion of the B. & K. jig performs the functions of plaintiff's jig, as stated by Earl Wagner and Mr. Williamson, is also confirmed by the specifications of the B. & K. jig patent (No. 1,014,308, pp. 1, 2) over the signatures of defendant's witnesses, Keller and Brassington, wherein it is stated:

"As the coal and slate are deposited in the rear end of the receptacle, the coal is floated by the jets of water which enter through the perforations in the rear curved end of the bottom plate, which strikes the water with considerable force in the oscillatory movement of the receptacle."

Again:

"The coal is fed into the receptacle from a suitable hopper at the rear end thereof, and is first separated at this point; the action of the water in the oscillation of the receptacle floating the coal, while the heavier particles of slate drop upon the bottom plate."

It may be that defendant's jig has some slight advantages in construction and operation over plaintiff's, yet it remains that the plaintiff's idea or conception of a jig, as embodied in claims 1 and 2, "the means of gyrating the screen in a vertical form," and the stepped construction of the bottom of the screen have been appropriated, and therefore the exclusive right granted by his patent has been invaded.

It follows that plaintiff's bill will be sustained, and a decree may be submitted in accordance herewith.